United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE TORRES-BOYD, | Case No.  23-cv-01836-MMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS CLAIMS; STAYING ACTION** |
| THYSSENKRUPP SUPPLY CHAIN SERVICES NA, INC., et al., | |
| Defendants. | |

Before the Court is defendants Thyssenkrupp Supply Chain Services NA, Inc. ("tk Supply") and Thyssenkrupp Logistics, Inc.'s ("tk Logistics") "Motion to Compel Individual Arbitration and Dismiss Class Claims," filed June 29, 2023.  Plaintiff Christine Torres-Boyd has filed opposition, to which defendants have replied; plaintiff, with leave of court, has filed a surreply.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In her complaint, filed March 13, 2023, plaintiff alleges she has been "jointly employed" by defendants as a "non-exempt employee from approximately April 2019 to the present."  (See Compl. ¶¶ 13, 24.)  According to plaintiff, she has been required to perform work "without being compensated at least minimum wages and/or overtime wages" (see Compl. ¶ 14(a)), has not been provided "meal periods" and "rest periods" (see Compl. ¶¶ 14(b-(c)), and has not received "accurate itemized wage statements" (see Compl. ¶ 14(d)).  Based on these allegations, plaintiff asserts six Causes of Action arising

---

[1] By order filed October 16, 2023, the Court took the matter under submission.

1    under California law, which claims she seeks to bring on her own behalf and on behalf of

2    any person "employed by [d]efendants as a non-exempt employee, however titled, in the

3    State of California during the period commencing on the date that is four years preceding

4    the filing of th[e] complaint."  (See Compl. ¶ 18.)

5                                    **DISCUSSION**

6           Defendants argue that, under the terms of an "Arbitration Agreement" (see Dooley

7    Decl. Ex. A), plaintiff's individual claims are subject to arbitration and the claims she has

8    asserted on behalf of a putative class must be stricken.  Defendants assert that the

9    Arbitration Agreement is enforceable under the Federal Arbitration Act ("FAA"), or,

10   alternatively, under the California Arbitration Act ("CAA").  The Court first considers

11   whether plaintiffs' claims are subject to arbitration under the FAA.

12   **A.  Federal Arbitration Act**

13          "The FAA's coverage provision, § 2, provides that '[a] written provision in . . . a

14   contract evidencing a transaction involving commerce to settle by arbitration a

15   controversy thereafter arising out of such contract or transaction . . . shall be valid,

16   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

17   revocation of any contract.'"  Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111 (2001)

18   (quoting 9 U.S.C. § 2).  A district court's role under the FAA is to determine "whether a

19   valid agreement to arbitrate exists," and, if so, "whether the agreement encompasses the

20   dispute at issue."  See Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126,

21   1130 (9th Cir. 2000).

22          Here, defendants offer evidence, undisputed by plaintiff, that, on March 10, 2023,

23   tk Supply's human resources manager "personally presented [p]laintiff with a second

24   version of the Arbitration Agreement that did not require a signature" (see Dooley Decl.

25   ¶ 11, Ex. A)[2] and that plaintiff, on the same date, "acknowledged receipt of the Arbitration

26

27          [2] In seeking to compel arbitration, defendants rely on the "second" Arbitration
     Agreement, and neither party has offered the prior version.  Accordingly, all references
28   herein to "Arbitration Agreement" are to the "second" Arbitration Agreement.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Agreement" in writing (see id. ¶ 12, Ex. B).  The written acknowledgement states, in

2    relevant part:  "I understand and agree that by continuing employment with the Company[3]

3    for five (5) days after the date I receive the Agreement, I am agreeing to the terms of the

4    Agreement."  (See id. Ex. B.)  It is undisputed that plaintiff continued to work for tk Supply

5    for more than 5 days after receiving the Arbitration Agreement, and, indeed, continues to

6    work for tk Supply.  (See id. ¶¶ 13, 16; Torres-Boyd Decl. ¶ 3.)

7         There also is no dispute that the Arbitration Agreement, if valid, encompasses the

8    dispute at issue, as the agreement applies to "any dispute arising out of" the parties'

9    "employment relationship," including claims "relating to . . . compensation, . . . , minimum

10   wage, . . . overtime, breaks and rest periods," as well as "all other federal or state legal

11   claims . . . arising out of or relating to [the] . . . employment."  (See Dooley Decl. Ex. A

12   ¶ 1.)  Further, although tk Logistics is not a party to the Arbitration Agreement, there is no

13   dispute that it can seek to compel arbitration, in that plaintiff alleges both defendants are,

14   as joint employers, responsible for the state law violations asserted in the complaint, and

15   the complaint lacks any language distinguishing between them.  See Garcia v. Pexco,

16   LLC, 11 Cal. App. 5th 782, 788 (2017) (holding alleged "joint employer" that was not

17   party to arbitration agreement was entitled to seek to compel arbitration, where complaint

18   asserted defendants were joint employers, referred to them "collectively as 'defendants'

19   without any distinction," and "alleged identical claims and conduct" against them).

20        Plaintiff argues, however, that a valid arbitration agreement does not exist, for the

21   reason that the Arbitration Agreement "was never signed by [p]laintiff" and is "otherwise

22   unenforceable" as "unconscionable."  (See Pl.'s Opp. at 6:18-19, 22-27.)  Further, plaintiff

23   contends, the Arbitration Agreement is, pursuant to § 1 of the FAA, excluded from the

24   FAA's coverage.  The Court considers plaintiff's three arguments in turn.

25        First, contrary to plaintiff's argument, plaintiff agreed to the terms of the Arbitration

26

27        [3] The "Company" is defined in the written acknowledgement as tk Supply and its

28   "affiliates."  (See id.)

3

United States District Court
Northern District of California

1   Agreement when she continued to work for tk Supply for more than five days after she

2   received the Arbitration Agreement.  As explained by the California Supreme Court,[4]

3   although a "party's acceptance of an agreement to arbitrate may be express, as where a

4   party signs the agreement," a "party's acceptance may be implied in fact."  See Pinnacle

5   Museum Tower Ass'n v. Pinnacle Market Development (US), LLC, 55 Cal. 4th 223, 236

6   (2012) (noting, "[an] employee's continued employment constitutes acceptance of an

7   arbitration agreement proposed by the employer").

8        Second, the Arbitration Agreement provides that "[t]he [a]rbitrator, and not any

9   court, shall have exclusive authority to resolve any dispute relating to the revocability,

10   validity, applicability, enforceability, unconscionability, or waiver of this Agreement,

11   including, but not limited to[,] any claim that all or any part of this Agreement is void or

12   voidable."  (See Dooley Decl. Ex. A ¶ 1.)  Defendants argue, and plaintiff does not

13   dispute, that said delegation clause "clearly and unmistakably" provides that any dispute

14   concerning the asserted unconscionability of the Arbitration Agreement is reserved for

15   the arbitrator.  See Brennan v. Opus Bank, 796 F.3d 1125, 1130-31 (9th Cir. 2015)

16   (holding district court must enforce language in arbitration agreement that "clearly and

17   unmistakenly delegate[s] [an] unconscionability determination to the arbitrator").

18   Although plaintiff, citing California law, argues the delegation clause is itself

19   unconscionable, on the ground that "it vests the power to determine [the Arbitration

20   Agreement's] validity and enforceability in a person financially invested in determining it is

21   valid and enforceable" (see Pl.'s Opp. at 22:26-27), application of such state law has

22   been found "wholly barred by the FAA," see Malone v. Superior Court, 226 Cal. App. 4th

23   1551, 1569 (2014) (rejecting unconscionability challenge to delegation clause where

24   plaintiff argued arbitrators have conflict of interest in determining enforceability);

25   see also Pinela v. Neiman Marcus Group, Inc., 238 Cal. App. 4th 227, 245-246 (2015)

26   

27        [4] For purposes of the FAA, "courts must apply ordinary state-law principles that
     govern the formation of contracts."  See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205,

28   1210 (9th Cir. 1998).

1    (holding "unconscionability arguments framed so broadly that they amount to attacks on

2    inherent features and consequences of arbitral delegation clauses run contrary to [federal

3    case law]").  In light thereof, the Court finds it lacks authority under the FAA to consider

4    plaintiff's argument that the Arbitration Agreement is unconscionable.

5         Third, the Court considers whether the Arbitration Agreement is exempt from

6    coverage under the FAA.  As noted, § 2 of the FAA provides that arbitration agreements

7    in "contract[s] evidencing a transaction involving commerce" are, generally, enforceable,

8    see 9 U.S.C. § 2, which contracts "include employment contracts," see Rogers v. Royal

9    Caribbean Cruise Line, 547 F.3d 1148, 1154 (2008).  Under § 1 of the FAA, however,

10   some types of employment contracts, namely "contracts of employment of seamen,

11   railroad employees, or any other class of workers engaged in foreign or interstate

12   commerce," see 9 U.S.C. § 1, are "exempt[ed] from [§ 2's] ambit," see Southwest Airlines

13   Co. v. Saxon, 142 S. Ct. 1783, 1787 (2022).  The term "any other class of workers

14   engaged in foreign or interstate commerce" means "transportation workers," see Circuit

15   City Stores, 532 U.S. at 119, and "transportation workers" are defined as those that "play

16   a direct and necessary role in the free flow of goods across borders," or, "[p]ut another

17   way, . . . [are] actively engaged in transportation of those goods across borders via the

18   channels of foreign or interstate commerce," see Saxon, 142 S. Ct. at 1790 (internal

19   quotations and citation omitted).  Such "transportation workers," however, do not

20   necessarily have to "cross state lines."  See Rittmann v. Amazon.com, Inc., 971 F.3d

21   904, 915 (9th Cir. 2020).  For example, a "class of workers that loads or unloads cargo on

22   or off airplanes bound for a different State or country is engaged in foreign or interstate

23   commerce."  See Saxon, 142 S. Ct. at 1790.

24        To determine whether a plaintiff is a member of a "class of workers engaged in

25   foreign or interstate commerce," see 9 U.S.C. § 1, the first step is to determine "the

26   actual work that the members of the class, as a whole, typically carry out," see Saxon,

27   142 S. Ct. at 1788.

28        Here, plaintiff argues that, in delivering parts from the warehouse to the plant, she

United States District Court
Northern District of California

1   and the other members of the subject class of workers are engaging in interstate

2   commerce.  Noting that there is no dispute that the parts themselves are coming into

3   California from locations outside the state (see Dooley Decl. ¶ 7 (stating that, after parts

4   are "delivered through the Port of Oakland," Tesla causes them to be "transport[ed]" to

5   warehouse); Torres-Boyd Decl. ¶ 12 (stating "trucks bearing Canadian license plates"

6   deliver goods to warehouse)), plaintiff, relying on what may be called "last leg" cases,

7   argues that, when delivering parts from the warehouse to the plant, she is "mov[ing] the

8   interstate freight as the final leg of its journey in interstate commerce" (see Pl.'s Opp. at

9   11:19-20).

10          Defendants, by contrast, relying on what may be called "come to rest" cases,

11   submit evidence pertaining to the chain of delivery, and argue the parts' journeys in

12   interstate commerce end prior to the time they are delivered by tk Supply drivers because

13   those drivers "did not deliver parts until after [they] had come to rest" at the warehouse.

14   (See Defs.' Mot. at 11:16.)  In that regard, defendants have offered evidence that tk

15   Supply "provides supply chain services" at "facilities," also referred to as "warehouses,"

16   located in Lathrop, California and Livermore, California, that are "leased" by Tesla (see

17   Dooley Decl. ¶¶ 3, 6, 10; Dillman Decl. ¶ 5), that tk Supply "stores" at those warehouses

18   "palletized component parts for Tesla," which parts Tesla "uses to manufacture electric

19   automobiles" at its "production plant in Fremont, California" (see Dooley Decl. ¶ 6), and

20   that Tesla "is responsible for ordering, picking up, and delivering its palletized component

21   parts" to its warehouses (see id. ¶ 7).  Additionally, defendants have offered evidence

22   that, upon request from Tesla, tk Supply delivers the parts from the warehouses to

23   Tesla's plant in Fremont (see id. ¶ 8), that plaintiff is employed as a truck driver, based

24   out of the Lathrop warehouse, that her "general[ ]" or "primary" duty is to transport the

25   above-referenced palletized component parts from the warehouse to Tesla's plant in

26   Fremont (see id. ¶¶ 5, 10; see also Torres-Boyd Decl. ¶¶ 3, 5), and that the duties

27   performed by plaintiff are, "generally," the duties performed by "tk Supply's other truck

28   drivers" (see Dooley Decl. ¶ 10).

United States District Court
Northern District of California

In the "last leg" cases, goods intended for a customer are delivered to the state in which the customer resides, but, before they are delivered to the customer, they arrive at an in-state warehouse or other in-state location, after which time they are delivered to the customer by a driver who travels only within the state.  In such cases, courts generally have found that the driver is engaged in interstate commerce, under the theory that the goods remain in interstate commerce until delivered to the customer.  See, e.g., Rittmann, 971 F.3d at 915 (holding class of workers that "pick up packages that have been distributed to Amazon warehouses . . . across state lines[ ] and transport them for the last leg of the shipment to their destination" are exempt from coverage under FAA; finding packages "remain in the stream of interstate commerce until delivered"); Nieto v. Fresno Beverage Co., 33 Cal. App. 5th 274, 284 (2019) (holding, where goods are "delivered from out-of-state to [employer's] warehouse where they [are] held for a short period before delivery to [its] customers," employer's in-state drivers are "essentially the last phase of a continuous journey of the interstate commerce being transported until reaching its destination(s) to [the] customers").

In the "come to rest" cases, goods ordered from out-of-state are delivered to an in-state warehouse or other facility, at which time their ultimate destination is unknown, and, at some later date, they are delivered to customers by in-state drivers.  See, e.g., Watkins v. Ameripride Services, 375 F.3d 821, 826 (9th Cir. 2004) (holding, where employer "places orders with an out-of-state vendor, with delivery to the company's intrastate warehouse for future delivery to customers yet to be identified, the transportation chain culminating in delivery to the customer is considered intrastate in nature"); Ross v. Subcontracting Concepts, LLC, 2021 WL 6072593, at *8 (E.D. Mich. December 23, 2021) (finding plaintiff was not "transportation worker" for purposes of FAA, where goods employer ordered from out-of-state had "come to rest" upon delivery to employer's warehouse, as customers had not yet ordered them from employer); see also Southern Pac. Transp. Co. v. Interstate Commerce Comm'n, 565 F.2d 615, 617-18 (9th Cir. 1977) (holding drivers who delivered employer's canned goods from in-state

canneries to employer's in-state warehouse were not engaged in interstate commerce, where employer "did not decide the final [out-of-state] destination of any shipment of goods until after the goods had come to rest in the . . . warehouse").

Defendants argue that, once parts are delivered to the warehouse, the subsequent delivery of those parts to Tesla's factory is not interstate in nature, for the reason that a "subsequent transaction" is necessary to "get [the parts] to move again" (see Defs.' Mot. at 9:26-27), and that such subsequent transaction does not occur "until Tesla requests further deliveries from tk Supply to Tesla's [factory]" (see Defs.' Reply at 3:13-15).  The evidence offered by defendants to establish the circumstances under which parts are transported from the warehouse to the factory (see Dooley Decl. ¶¶ 8, 10) is, however, lacking in detail; for example, defendants offer no evidence as to whether Tesla's requests for delivery to the factory are made before or after the parts are delivered to the warehouse.  See Walling v. Jacksonville Paper Co., 317 U.S. 564, 571 (1943) (holding determination of whether goods are being transported in interstate commerce "entails an analysis of the various types of transactions and the particular course of business"; finding evidence insufficient to establish whether commerce was interstate or in-state, where such evidence was "of a wholly general character").

Moreover, plaintiff has offered evidence that describes in greater detail the circumstances of the deliveries to and from the warehouse.  In particular, plaintiff, in her declaration, states that "almost all of the trailers" delivered to the warehouse are "never unloaded," that, "typically," plaintiff "connect[s]" her truck to a trailer that has been delivered to the warehouse and then delivers the trailer and its contents to the factory, and that, "[o]ften," the trailers arriving at the warehouse remain there "for only a short period" before plaintiff or other tk Supply drivers deliver them to the factory.  (See Torres-Boyd Decl. ¶¶ 10-11.)  Plaintiff's evidence, which has not been disputed by defendants, suggests that the decision as to where and when the parts are to be delivered often occurs prior to the arrival of those parts to the warehouse.

//

Additionally, the Ninth Circuit has recently rejected the argument that "the timing of an order is itself dispositive of whether goods [at a warehouse] remain in the stream of interstate commerce," where those goods are "inevitably destined from the outset of the interstate journey" for delivery to known customers, see Carmona Mendoza v. Domino's Pizza, LLC, 73 F.4th 1135, 1138 (9th Cir. 2023) (holding goods delivered from out-of-state location to franchisor's in-state warehouse remained in interstate commerce until later delivered to in-state franchisees that placed orders after goods arrived at warehouse; finding where goods are, at outset of journey, "destined" for delivery out of state, "pause" at warehouse does not "remove them from the stream of interstate commerce").

Accordingly, the Court finds, for purposes of § 1, plaintiff has made a sufficient showing that she is a transportation worker and, consequently, is exempt from coverage under the FAA. In light thereof, defendants are not entitled, under the FAA, to an order compelling plaintiff to arbitrate her individual claims.

**B. California Arbitration Act**

The Court next determines whether, under the CAA, defendants are alternatively entitled to an order compelling arbitration and dismissing the class claims.

Under the CAA, arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." See Cal. Code Civ. Proc. § 1281. "A party seeking to compel arbitration of a dispute bears the burden of proving the existence of an arbitration agreement, and the party opposing arbitration bears the burden of proving any defense." Jenks v. DLA Piper Rudnick Gray Cary US LLC, 243 Cal. App. 4th 1, 8 (2015) (internal quotation and citation omitted).

Here, as discussed above, plaintiff agreed to the terms of the Arbitration Agreement by continuing to work more than five days after the Arbitration Agreement was presented to her. Consequently, the Court next considers plaintiff's three arguments that the Agreement is not enforceable under the CAA, namely, her arguments that wage claims categorically are not subject to arbitration, that the Arbitration Agreement is

unconscionable, and that a class action waiver contained in the Arbitration Agreement (see Dooley Decl. Ex. A ¶ 5 (providing employee "agree[s] to bring any claim on an individual basis and not on a class and/or collective basis")), is unenforceable.[5]

Initially, relying on § 229 of the California Labor Code, plaintiff argues that "claims involving wages cannot be compelled to arbitration" (see Pl.'s Opp. at 16:15), and, consequently, that none of her claims is subject to arbitration. Pursuant to § 229, "[a]ctions to enforce the provision of this article for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate," see Cal. Lab. Code § 229, "this article" being a reference to "sections 200 through 244" of the Labor Code, see Lane v. Francis Capital Mgmt. LLC, 224 Cal. App. 4th 676, 684 (2014). Only three of plaintiff's six Causes of Action are brought under the subject article, specifically, the Third Cause of Action, asserting, under § 226.7, a failure to provide meal periods, the Fourth Cause of Action, asserting, under § 226.7, a failure to provide rest periods, and the Fifth Cause of Action, asserting, under § 226, a failure to provide accurate itemized wage statements, none of which claims seeks to collect unpaid wages. See id. (finding § 229 inapplicable to claims alleging failure to provide meal periods, rest periods, and itemized wage statements; noting those claims are not "action[s] for the 'collection of due and unpaid wages'"). Accordingly, the Court finds § 229 is not applicable to any of plaintiff's claims.

Next, plaintiff argues that, under the CAA, the delegation clause in the Arbitration Agreement is unconscionable and, for that reason, she can raise in district court her argument that the Arbitration Agreement is unconscionable. As discussed above, although the particular argument plaintiff makes as to unconscionability of the delegation clause is not cognizable under the FAA, there exists, under California law, authority

---

[5] The CAA, unlike the FAA, does not contain an exemption for transportation workers' contracts of employment. See Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83, 98 (2000) (holding CAA "contains no exemption for employment contracts").

1  holding "a delegation clause in an adhesion contract is unconscionable."  See Chin v.

2  Advanced Fresh Concepts Franchise Corp., 194 Cal. App. 4th 704, 710 (2011) (citing

3  cases).  Nevertheless, as one California Court of Appeal has noted, "declaring [a]

4  delegation clause unenforceable would serve no purpose unless some other term of the

5  arbitration [agreement] is unconscionable."  See id. at 711.  Here, plaintiff argues that

6  one other term of the Arbitration Agreement is unconscionable and that the absence of

7  an assertedly necessary term is unconscionable as well.

8       In that regard, plaintiff first challenges as unconscionable the term providing that

9  each party may "take the deposition of two individual fact witnesses and any expert

10  witness designated by another party"; "propound requests for production [and] ten

11  interrogatories"; and "subpoena witnesses and documents for discovery or the arbitration

12  hearing, including testimony and documents relevant to the case from third parties, in

13  accordance with any applicable state or federal law."  (See Dooley Decl. Ex. A ¶ 3.)

14  Contrary to plaintiff's argument, however, the above-quoted discovery limitations are not

15  unconscionable, as "discovery limitations are an integral and permissible part of the

16  arbitration process."  See Dotson v. Amgen, Inc., 181 Cal. App. 4th 975, 983 (2010).

17  Moreover, the term here at issue also provides that if a party seeks to conduct additional

18  discovery and is unable to obtain a stipulation, "the [a]rbitrator will have . . . authority to

19  entertain requests for additional discovery, and to grant or deny such requests based on

20  the circumstances of a particular case."  (See Dooley Decl. Ex. A ¶ 3.)  Arbitrators are

21  "assumed" to exercise their discretion to allow additional discovery "in a reasonable

22  manner in conformity with the law."  See Dotson, 181 Cal. App. 4th at 983 (finding

23  discovery term limiting parties to taking "deposition of one individual and any expert

24  designated" and "making requests for production of documents to any party" was not

25  unconscionable where it afforded arbitrator discretion to allow additional discovery "upon

26  a showing of need").[6]

27  _____

28       [6] Plaintiff's reliance on Fitz v. NCR Corp., 118 Cal. App. 4th 702 (2004), is
    misplaced, as, in that case, the arbitration agreement allowed only limited discovery and

United States District Court
Northern District of California

Likewise unpersuasive is plaintiff's argument, citing <u>Armendariz</u>, that the

Arbitration Agreement is unconscionable because it is "silent about judicial review of the

award." (<u>See</u> Pl.'s Opp. at 24:10.)  Contrary to plaintiff's argument, <u>Armendariz</u> does not

require arbitration agreements to contain provisions "about judicial review."  Rather,

<u>Armendariz</u> holds that, in order for an arbitration agreement to be enforceable as to

claims asserting violations of "statutory civil rights in the workplace," the agreement must

contain certain "requirements," one of which is that the agreement "require a written

award." <u>See</u> <u>Armendariz</u>, 24 Cal. 4th at 102-03.  In so holding, the California Supreme

Court explained that, although "judicial scrutiny of arbitration awards necessarily is

limited," judicial review of an award resolving a statutory civil rights claim must "ensure

that arbitrators comply with the requirements of the statute at issue," <u>see</u> <u>id.</u> at 106

(internal quotation and citation omitted), and that, "in order for such judicial review to be

successfully accomplished," the arbitrator "must issue a written arbitration decision that

will reveal, however briefly, the essential findings and conclusions on which the award is

based," <u>see</u> <u>id.</u> at 107.  Here, assuming the requirements identified in <u>Armendariz</u> are

equally applicable to claims asserting violations of the Labor Code, the Arbitration

Agreement complies therewith, as it includes a term requiring that the arbitrator "provide

a reasoned written statement of the [a]rbitrator's decision which shall explain the award

given and the findings and conclusions, both factual and legal, on which the decision is

based." (<u>See</u> Dooley Decl. Ex. A ¶ 3.)

Lastly, plaintiff, citing <u>Gentry v. Superior Court</u>, 42 Cal. 4th 443 (2007), argues that

the class action waiver in the Arbitration Agreement is unenforceable.  In <u>Gentry</u>, the

California Supreme Court identified the following four factors a court must consider when

---

"constrained" the arbitrator from allowing additional discovery unless the movant
"demonstrate[d] that a fair hearing would be *impossible* without additional discovery."
<u>See</u> <u>id.</u> at 716-17 (emphasis in original) (holding provision affording arbitrator "discretion
to determine whether additional discovery is necessary . . . [was] an inadequate safety
valve" in light of "'impossibility' standard" constraining arbitrator's exercise of discretion).
Here, by contrast, no heightened standard limits the arbitrator's discretion.

1   addressing an argument that a class action waiver in an arbitration agreement is

2   unenforceable:  "the modest size of the potential individual recovery, the potential for

3   retaliation against members of the class, the fact that absent members of the class may

4   be ill informed about their rights, and other real world obstacles to the vindication of class

5   members' right to [wages] through individual arbitration."  See id. at 463.

6          To be entitled to a finding that a class action waiver is unenforceable, a plaintiff

7   must make a "proper factual showing" as to the above-referenced four factors.  See id. at

8   466; compare Garrido v. Air Liquide Industrial U.S. LP, 241 Cal. App. 4th 833, 846-47

9   (2015) (affirming trial court's finding class action waiver unenforceable where plaintiff

10  submitted "evidence" as to each of the four factors), with Brown v. Ralphs Grocery Co.,

11  197 Cal. App. 4th 489, 496-97 (2011) (reversing trial court's finding class action waiver

12  unenforceable, where plaintiff failed to offer any evidence as to four factors).

13         Here, as set forth below, plaintiff has failed to submit evidence sufficient to satisfy

14  any of the four factors.

15         As to the first factor, plaintiff fails to set forth what she or her counsel believes to

16  be the potential value of her individual claims or those of the putative class members;

17  rather, plaintiff relies solely on defendants' Notice of Removal, in which defendants, for

18  purposes of demonstrating federal jurisdiction, made various "assumptions" as to the

19  value of plaintiff's claims (see Notice of Removal ¶ 35; see also id. ¶¶ 41, 44, 47), and,

20  based thereon, asserted the "amount in controversy" is at least $5,150,000 (see id.

21  ¶ 52),[7] which sum plaintiff, relying on defendants' assumption that the putative class

22  consists of 500 persons, interprets as a calculation that each putative class member's

23  claims are worth only $10,300.  Plaintiff fails, however, to show defendants' calculation

24  _____

25         [7] A district court has "original jurisdiction over class actions that have a class of
    over 100 members, minimal diversity between the parties, and an amount in controversy
26  of more than $5 million."  See Greene v. Harley-Davidson, Inc., 965 F.3d 767, 771 (9th
    Cir. 2020) (citing 28 U.S.C. § 1332(d)).  Where a class action is filed in state court and
27  the defendant seeks to remove the matter to district court, the defendant, to establish the
    amount-in-controversy requirement, "needs to plausibly show the potential liability
28  exceeds $5 million."  See id. at 772.

United States District Court
Northern District of California

1  represents anywhere near the ceiling of the value of the class claims, particularly when

2  defendants did not purport to value plaintiffs' claim that the class was "not paid for all

3  hours worked" (<u>see</u> Compl. ¶ 36) or her claims for prejudgment interest (<u>see</u> Compl.,

4  Prayer for Relief).  Moreover, plaintiff does not assert that the class will, as defendants

5  assumed, seek no damages beyond the date on which the instant complaint was filed nor

6  has plaintiff accepted defendants' "conservative[ ]" (<u>see</u> Notice of Removal ¶ 41) use of

7  the minimum wage.

8      With respect to the second factor, plaintiff, relying on evidence that she was

9  presented with the Arbitration Agreement nine days after she filed a different lawsuit

10  against defendants (<u>see</u> Torres-Boyd Decl. ¶¶ 13-14), argues defendants have already

11  retaliated against her for pursuing legal claims.  Plaintiff, however, offers no evidence to

12  show that, at the time tk Supply presented plaintiff with the Arbitration Agreement,

13  defendants knew plaintiff had filed a lawsuit against them, a fact necessary to support a

14  claim of retaliation.  <u>See</u> <u>Morgan v. Regents of the Univ. of California</u>, 88 Cal. App. 4th

15  52, 69-70 (2000) (holding retaliation claim requires showing of "causal link" between

16  "protected activity" and "adverse employment action"; noting, "[e]ssential to a causal link

17  is evidence that the employer was aware that the plaintiff had engaged in the protected

18  activity").

19      Lastly, as to the third and fourth factors, plaintiff has not identified, in her

20  opposition or otherwise, any evidence in support thereof.

21      Accordingly, defendants are entitled, under the CAA, to an order compelling

22  plaintiff to arbitrate her individual claims and dismissing plaintiff's class claims.

23  //

24  //

25  //

26  //

27  //

28  //

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, defendant's motion to compel individual arbitration and to strike the class claims is hereby GRANTED.

The instant action is hereby STAYED, pending completion of the arbitration proceedings.

**IT IS SO ORDERED.**

Dated: October 23, 2023

MAXINE M. CHESNEY
United States District Judge